UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOVEREIGN CAPE COD INVESTORS LLC,<br><br>Plaintiff,<br><br>-against-<br><br>EUGENE A. BARTOW INSURANCE AGENCY, INC.<br><br>Defendant. | Index No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Sovereign Cape Cod Investors LLC ("Plaintiff" or "SCC"), by and through its attorneys, Tuttle Yick LLP, in support of its Complaint against Defendant Eugene A. Bartow Insurance Agency, Inc. ("Defendant" or "Bartow") states as follows:

**PRELIMINARY STATEMENT**

1. This action arises out of defendant Bartow's gross negligence in failing to secure property and casualty insurance for SCC's property located at 261 Main Street, Wareham, Massachusetts (the "Property") despite a clear and acknowledged instruction do so.

2. Bartow was charged with adding the Property to a "blanket" policy that covered a host of properties in SCC and its affiliates' real estate portfolio.

3. Bartow never did so.

4. Worse still, in numerous follow-up conversations with Bartow, in which SCC discussed the coverage available to the Property under the blanket policy, Bartow made clear that the Property was covered.

5. But it wasn't.

6. Consequently, on January 28, 2020, when significant water damage occurred in the basement of the Property that caused an estimated $450,000 in damages, Plaintiff was left uninsured for all of its damages.

7. But for Bartow's failures to secure adequate insurance, SCC would have been adequately protected in the wake of this massive damage event.

## PARTIES

8. Plaintiff is a Massachusetts limited liability company with its principal place of business located 10 North Road, Chelmsford, Massachusetts 01824.

9. Defendant is a New York limited liability company, with its principal place of business located 62 South Second Street, Suite C, Deer Park, New York 11729.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.

11. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b)(1), as Defendant is a resident of the District.

## FACTUAL BACKGROUND

12. For many years, SCC and its affiliates have held a sizeable real estate investment portfolio.

13. Included within this portfolio is the Property, which SCC has owned for more than five years.

14. The properties in the portfolio have largely been covered by a blanket property and casualty policy with Harleysville Insurance Company, a subsidiary of Nationwide Mutual Insurance Company (the "Nationwide Policy").

15. The Nationwide Policy was secured through Bartow.

16. Before it was retained as SCC's broker, Bartow pitched itself to SCC as a kind of in-house risk management team, with the ability to handle all of SCC's coverage needs with a simple email or call.

17. Indeed, after Bartow was retained, this is exactly how the relationship operated — as SCC's fluid real estate portfolio changed over time, and properties were acquired and sold, SCC would simply email or call Bartow to add or remove those properties from its blanket property and casualty insurance policy.

18. A benefit of Bartow's all-inclusive service was that SCC never dealt with Nationwide directly. In fact, SCC never even saw a bill from Nationwide; those were handled by Bartow, which allocated premium costs based on the properties in the covered portfolio.

19. Initially, the Property was not covered under the Nationwide Policy.

20. The Property, together with two other assets in Cape Cod, Massachusetts (collectively, the "Cape Cod Properties"), were leased to a single tenant, a bank, which carried its own insurance policy naming SCC as an additional insured.

21. But in or around January 2019, the bank's lease with SCC expired, and it vacated all three of the Cape Code Properties.

22. On January 25, 2019, SCC emailed Jason Bartow ("Jason"), Bartow's executive vice president, and instructed him to add all three Cape Cod Properties to the Nationwide Policy.

23. This was standard practice.

24. Jason confirmed receipt of the instruction later that day.

25. But he never actually added any of the Cape Cod Properties to the Nationwide Policy.

26. Evidently Jason did contact Nationwide about adding the Property to the Nationwide Policy. But Nationwide advised Jason that the Property would not be added.

27. Rather than follow up with Nationwide or obtain separate coverage for the Property, Jason did nothing.

28. Jason never told SCC that the Property had not been added to the Nationwide Policy.

29. Nevertheless, Jason gave SCC every reason to believe that it had been.

30. For instance, in March 19, 2019, SCC emailed Jason to ask if the Nationwide Policy had a flood insurance component that would cover the Cape Cod Policies in the event of a flood.

31. Instead of advising that the Cape Code Policies weren't covered by the Nationwide Policy at all, Jason simply responded that the Nationwide Policy did not have a flood insurance component.

32. And on June 26, 2019, SCC advised Jason by email that two of the three Cape Cod Properties had been sold, and instructed him to remove them from the Nationwide Policy, but to keep the Property under that policy, as it was not sold.

33. Jason responded within minutes to confirm receipt of these instructions.

34. These follow-up conversations gave SCC reasonable assurance that the Property was protected under the Nationwide Policy.

35. Because the premiums for insurance coverage on the Property would have been bundled into the blanket Nationwide Policy premium covering the entire portfolio, and because

that premium would not typically adjust until the policy's renewal, SCC had no reason to doubt that it was not paying for insurance coverage on the Property. It relied on Bartow.

36. Even Jason seemed to believe that he had added the Property to the Nationwide Policy.

37. Indeed, when SCC first notified Jason of the January 28, 2020 water damage event, Jason confirmed to SCC that insurance coverage existed for the Property and proceeded to make a claim with Nationwide for the loss — assuming that the Property had been added to the blanket policy.

38. Eager to mitigate its damages, SCC wanted to retain a loss mitigation and remediation company (ServPro) to drain any water from the Property, demolish and remove any water-logged contents, and dry the Property. Following protocol, SCC requested that Jason provide pre-approval from Nationwide for the expenditure in writing and schedule a visit to the Property by Nationwide's adjuster. Jason participated in these conversations as if there were no question that there was coverage under the Nationwide Policy.

39. SCC had several further calls with Jason discussing deductibles and coverage limits. Again, Jason gave no indication on these calls that there was no coverage for the Property.

40. Things quickly changed.

41. Nationwide contacted Jason and advised that there was no coverage for the Property as it had not been added to the Nationwide Policy.

42. Realizing his mistake, Jason wet quiet.

43. When asked for a copy of the written notice to Nationwide or pre-approval for ServPro, Jason could not provide them.

44. SCC could not get a response from Jason at all.

5

45.     Instead, his father, Eugene Bartow ("Eugene"), stepped in.

46.     Eugene called SCC on January 31, 2020. With multiple people listening in on the call, Eugene, tepidly advised that the Property "may not" be covered under the Nationwide Policy. When pressed for a straight answer regarding coverage, Eugene admitted that the Property was not covered under the blanket policy and went on to apologize — acknowledging Jason had "completely dropped the ball" and had "made a mistake" — and to offer to "notify his E&O carrier" of this mistake.

## FIRST CAUSE OF ACTION
### Professional Malpractice

47.     Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint as if set forth at length herein.

48.     Defendant, a licensed insurance broker, held itself out to Plaintiff as knowledgeable in the field of insurance and represented that it was experienced in securing all insurance needs of Plaintiff.

49.     Defendant owed a duty to Plaintiffs to exercise reasonable care and diligence in the performance of these services and to perform such services in a manner consistent with the level of learning, skill, and experience ordinarily exercised by persons performing similar services in and around New York.

50.     By failing to secure adequate insurance coverage on the Property, Defendant breached this duty to Plaintiff.

51.     Had Defendant acted on Plaintiff's instructions, then the Property would have had insurance coverage for the water damage event, either under the Nationwide Policy or some other policy.

52. As a direct and approximate result of Defendant breaching its professional duties to Plaintiff, Plaintiff has been, and continues to be, damaged in an amount to be proven at trial, but no less than $450,000.00 plus costs and disbursements.

WHEREFORE, Plaintiff demand judgment against the Defendant in an amount to be proven at trial, but no less than $450,000 plus costs and disbursements and for such other relief as the Court deems proper.

Dated: New York, New York
August 24, 2020

**TUTTLE YICK LLP**

By: */s/ David G. Skillman*
David G. Skillman
352 Seventh Avenue, 14th Floor
New York, New York 10001
(917) 810-7603

*Attorneys for Plaintiff*