UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SOVEREIGN CAPE COD INVESTORS LLC,

                Plaintiff,                              **MEMORANDUM
                                                                          AND ORDER**
                                                                         20-CV-03902 (DG)(JMW)

       -*against*-

EUGENE A. BARTOW INSURANCE AGENCY,
INC.,

                Defendant.
------------------------------------------------------------------X

**A P P E A R A N C E S:**

**David G. Skillman**
Tuttle Yick LLP
352 Seventh Avenue
14th Floor
New York, NY 10001
*Attorney for Plaintiff Sovereign Cape Cod Investors LLC*

**Maureen E. O'Connor**
L'Abbate Balkan Colavita & Contini
3 Huntington Quadrangle, Suite 102-S
Melville, NY 11747
*Attorney for Defendant Eugene A. Bartow Insurance Agency, Inc.*

**WICKS,** Magistrate Judge:

This case involves a single claim of professional malpractice against an insurance broker for allegedly failing to procure insurance. Specifically, Plaintiff Sovereign Cape Cod Investors, LLC ("SCCI") claims Defendant Eugene A. Bartow Insurance Agency, Inc. ("Bartow") did not secure adequate commercial property insurance, as SCCI claims it requested Bartow to do, before SCCI's commercial property sustained significant water damage, leaving SCCI uninsured and "under water." Before the Court at this time are two motions: one to compel document production and a second to quash non-party subpoenas.

The Court assumes familiarity with the prior proceedings but will recount a brief background of recent events relevant to the present dispute. On November 22, 2021, SCCI moved to compel production of, *inter alia*, Bartow's documents and communications involving its insurance carrier, Utica Mutual Insurance Company (the "Utica Documents"). (DE 17.) Bartow opposed that motion. (DE 18.) On December 28, 2021, the Court—in light of the fact that Bartow had yet to produce a privilege log associated with the withheld Utica Documents—denied SCCI's motion with leave to renew and directed Bartow to produce a privilege log. (DE 21.) SCCI now renews its motion, after having obtained Bartow's privilege log, to compel the production of the Utica Documents. (DE 24.) Distilling the arguments, SCCI contends that Bartow has not established that the work product doctrine or attorney-

2

client privilege protect the Utica Documents from disclosure and that, in any event, Bartow waived its privilege objections in its responses to SCCI's document requests. (*Id.*)

In a separate motion, SCCI moves to quash Bartow's third-party subpoenas directed at Bachant Builders, the general contractor that has provided SCCI numerous appraisals for construction work on the property at issue. (DE 29.) Bartow opposes both of SCCI's motions in their entirety. (DE 27, 30.) For the reasons that follow, SCCI's motion to compel is granted in part and denied in part, and SCCI's motion to quash is denied.

## I.   DISCUSSION

### A. SCCI's Motion to Compel

#### i.   *Are the Utica Documents Protected under the Work Product Doctrine?*

Long ago in *Hickman v. Taylor*, 329 U.S. 495 (1947), the Supreme Court enunciated the rule that the work product doctrine protects documents prepared in anticipation of litigation from adversarial invasion absent a showing of substantial need. This rule, of course, has since been codified in Federal Rule of Civil Procedure 26(b)(3). Fed. R. Civ. P. 26(b)(3)(A); *see Mermelstein v. United States Dep't of Just., Fed. Bureau of Investigation*, 19-CV-00312 (GRB) (JMW), 2021 WL 3455314, at *7 (E.D.N.Y. Aug. 4, 2021). Materials are prepared "in anticipation of litigation," and thus fall within the purview of work product protection, "if 'in light

3

of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (citation omitted and emphasis in original). On the other hand, the "'work product [doctrine] does not apply to' documents that are prepared 'in the ordinary course of business or that would have been created in essentially the same form irrespective of the litigation.'" *Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.*, CV 16-6517 (SJF) (AKT), 2018 WL 4864833, at *3 (E.D.N.Y Sept. 28, 2018) (quoting *Adlman*, 134 F.3d at 1202). It is beyond cavil that "'[t]he party asserting work-product immunity bears the burden of establishing that it applies.'" *United States v. Town of Oyster Bay*, 14-CV-2317 (GRB)(SIL), 2022 WL 34586, at *4 (E.D.N.Y Jan. 3, 2022) (brackets in original) (quoting *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 46 (E.D.N.Y. 2011)); *see In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) ("The party invoking the [work product doctrine] bears the heavy burden of establishing its applicability").

The insurance context presents even thornier issues, requiring close examination of the facts when applying these rules. That is, the work product doctrine in the insurance context is "'particularly troublesome because it is routine business of insurance companies to investigate and evaluate claims.'" *United Nat'l Ins. Co. v. MNR Hotel Grp./363 Roberts Partners, LLC*, Civ. No.

4

3:19CV01265(JAM), 2021 WL 1220819, at *3 (D. Conn. Apr. 1, 2021) (quoting *Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, No. 19CV00554(PAE), 2020 WL 1970697, at *3 (S.D.N.Y. Apr. 24, 2020)); *see 99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*, 18-CV-126 (RA) (KHP), 2020 WL 2730944, at *7 (S.D.N.Y May 6, 2020) ("In insurance matters, it is often difficult to determine when work product protection might apply. This is because it is routine for insurance companies to investigate claims while at the same time the potential for litigation is ever present."); *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 14-CV-4717 (FB), 2016 WL 2858815, at *6 (E.D.N.Y. May 16, 2016) ("Indeed, numerous courts have recognized the inherent difficulty in assessing work product claims made by an insurance company and the insurance company's consequent need to provide support for its work product claims") (collecting cases). Because of the blurred line dividing work product and insurance claims reports,

> courts presented with work product disputes in the insurance context must be careful not to hold that documents are protected from discovery simply because of a party's "ritualistic incantation" that all documents created by insurers are made in preparation for litigation, and mindful of the fact that insurer-authored documents are more likely than attorney-authored documents to have been prepared in the ordinary course of business, rather than for litigation purposes.

*Weber v. Paduano*, No. 02 Civ. 3392(GEL), 2003 WL 161340, at *4 (S.D.N.Y. Jan. 22, 2003) (citation omitted).

5

In other words, the work product doctrine is not applicable merely because a document was created by an insurer. Parties relying on the work product doctrine in the insurance context therefore "may not rest on conclusory allegations of privilege, but must establish, by objective evidence, that the author of the document anticipated litigation at the time that the document was created, and would not have created the document in essentially the same way had the prospect of litigation not existed." *Id.* (citing *Adlman*, 134 F.3d at 1202).

Here, Bartow has failed to establish that most[1] of the Utica Documents are protected by the work product doctrine. Because this case features an insurance dispute—adding a layer of complexity to the work product analysis—it is incumbent upon Bartow, the party asserting the privilege,[2] to "demonstrate by specific and competent evidence that the documents were created in anticipation of litigation." *Id.* (citation omitted). Rather than doing so, Bartow states in conclusory fashion that, "as detailed in Bartow's privilege log, SCCI's request calls for production of

---

[1] These documents include those bearing Bates Numbers 1082–1085; 1089; 1098–1103; 1105–1112; 1114; 1123–1127; 1132–1134; 1135–1138; 1146–1147; 1153–1154; 1155–1171; 1192–1202; 1211–1220; 1249–1259; 1270–1272; 1285–1290; 1296; 1301; 1312–1316; 1328–1329; 1340–1341; 1346–1347; 1369–1377; 1384–1392; 1403–1405; 1416; 1436–1437; 1453; 1490–1491; 1503; 1515–1521; 1532–1534; and 1547. (DE 24-1 at 1–3.)

[2] In its opposition, Bartow suggests that it is SCCI's burden here to establish that is has a substantial need for Utica Documents. (DE 27 at 1.) In doing so, Bartow puts the proverbial cart before the horse, as this argument assumes that the work product doctrine protects the communications at issue. As noted *supra*, it is Bartow's, not SCCI's, burden to establish in the first instance that the work product privilege protects the Utica Documents. *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183. If Bartow did indeed make this showing, *then and only then* would the burden shift to SCCI to establish a substantial need.

6

documents that are specifically addressed in the *Adlman* decision, material prepared in anticipation of litigation, *i.e.*, which 'were prepared to assist in the making of a business decision expected to result in the litigation[.]'" (DE 27 at 2–3.) Bartow's privilege log is equally unilluminating. The descriptions of the withheld communications proffered by Bartow include "Background investigation documents," "Investigative Report to E&O Insurer," and "Email and Investigative Report re background investigation." (DE 24-1.) If anything, these descriptions suggest that the communications at issue are routine insurance investigative reports that are not covered by the work product doctrine. *Compare Weber*, 2003 WL 161340, at *5–7. Bartow's only other argument—that SCCI retained counsel immediately following the water damage event at issue (DE 27 at 3)—is inapposite and woefully fails to establish that the withheld documents were prepared in anticipation of litigation as opposed to being prepared in the ordinary course of business.

Bartow has, however, established that the Utica Documents bearing Bates Numbers 1550–2671 are covered by the work product doctrine. These communications are between Bartow, its counsel, and Utica, and concern the "[i]nital assignment and background materials for counsel at outset of litigation and commencement of action, including notes, mental impressions, input from Bartow and related materials." (DE 24-1 at 3.) These communications occurred *after* SCCI

7

commenced this action, involved Bartow's counsel, and appear by description to contain mental impressions and notes. *Au fond*, these materials "clearly do not relate to the regular claims filing process," and therefore are covered by the work product doctrine. *99 Wall Dev. Inc.*, 2020 WL 2730944, at *8; *see also Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.*, No. 96CV05590(MJL)(HBP), 1998 WL 729735, at *7 (S.D.N.Y. Oct. 16, 1998) ("While not determinative, an insurer's referral of a claim to its attorney is a significant factor in determining when the insurer anticipates litigation.").

### ii. *Did Bartow Waive the Attorney-Client Privilege and Work Product Protections?*

SCCI argues that Bartow waived its work product and attorney-client protections when it failed to raise them in its responses and objections to SCCI's document demands. (DE 24 at 2–3.) Bartow in turn contends that these privileges were indeed raised in its responses and objections in the general objections portion of that document. (*See* DE 27 at 3; DE 24-2 at 2.)

In 2015, the Advisory Committee to the Federal Rules of Civil Procedure amended Rule 34 with the goal of "reducing the potential to impose unreasonable burdens by objecting to requests to produce." Fed. R. Civ. P. 34 advisory committee notes to 2015 amendment. Fifteen months later, in *Fischer v. Forrest*, 14 Civ. 1304 (PAE) (AJP), 14 Civ. 1307 (PAE) (AJP), 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017), the Honorable Andrew J. Peck painstakingly detailed the changes brought on

8

by the 2015 amendments, noting that it was "time, once again, to issue a discovery wake-up call to the Bar in this District," *id.* at *1. In his order, Judge Peck walked through the newly adopted language of Rule 34 and the associated advisory committee notes, highlighting "Rule 34's requirement to state objections with specificity . . . and to clearly indicate whether responsive material is being withheld on the basis of objection[.]" *Id.* at *3. Judge Peck's shot across the bow of litigators underscored that Rule 34 no longer allows parties to assert generalized objections to discovery requests. *See generally id.* at *1–3; *see also CapRate Events, LLC v. Knobloch*, 17-CV-5907-NGG-SJB, 2018 WL 4378167, at *2 (E.D.N.Y Apr. 18, 2018) ("The 2015 Amendments to the Federal Rules no longer permits global, generalized objections to each request."). That is, generalized objections peppered in a response and objection in scattershot form—seemingly applying to all demands rather than being tailored to particular demands—violate the rule. The exception to this rule—as noted by Judge Peck and other subsequent courts—is that general objections may be appropriate only if the objection applies to every response to every document request. *Forrest*, 2017 WL 773694 at *3 (noting that "[g]eneral objections should rarely be used after December 1, 2015 unless each such objection applies to each document request"); *see, e.g.*, *Lombardo v. R.L. Young, Inc.*, 3:18 CV 188 (JBA), 2019 WL 4233568, at *3 (D. Conn. Sept. 6, 2019) (same); *Futreal v. Ringle*, No. 7:18-CV-00029-FL, 2019 WL 137587, at *4 (E.D.N.C. Jan. 8, 2019)

9

(interpreting *Fischer*). And, of course, it goes without saying that failure to properly object on the basis of a privilege or the work product doctrine "may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5) advisory committee notes to 1993 amendment.

The Court concludes that Bartow did not waive the attorney-client privilege or work product protection in asserting general objections to SCCI's document demands. As noted in its opposition, Bartow did lodge a general privilege objection for each of SCCI's document requests, and therefore preserved its objections by putting SCCI on notice of their existence. (DE 27 at 3; DE 24-2 at 2.) Although Bartow's counsel by no means exercised best practices in the manner of doing so, the stated, general objections included privilege claims which, as noted in *Forrest*, ordinarily apply to every request. 2017 WL 773694 at *3 (deeming objections made without specificity waived "except as to privilege").[3] As such, Bartow's privilege objections fall under the narrow exception—which, again, should be used sparingly—to the rule that general objections are no longer permissible. Thus,

---

[3] The Court respectfully disagrees with the *Futreal* court's interpretation of *Forrest*, in particular its conclusion that *Forrest* "does not support [the] use of general objections to raise work-product objection[s]." 2019 WL 137587, at *4. The *Forrest* court explicitly referenced the practice of objecting to the production of privileged material in discussing circumstances where an objection applies to each document demand. 2017 WL 773694 at *3 ("General objections should rarely be used after December 1, 2015 unless each such objection applies to each document request (*e.g.*, *objecting to produce privileged material*).") (emphasis added). This interpretation of *Forrest* squares with the importance of privileged materials and courts' general reluctance to require disclosure of such materials.

10

Bartow did not waive the attorney-client privilege or work product protection in lodging general, as opposed to specific, objections to SCCI's document requests.

In sum, there has been no waiver of the work product objection by Bartow.

* * *

Accordingly, the Court finds that the Utica Documents bearing Bates Numbers 1550–2671 are protected by the work product doctrine and need not be produced, but the remaining documents are not and must be disclosed.

### B. SCCI's Motion to Quash

SCCI moves to quash Bartow's third-party subpoenas directed at Bachant Builders, urging that the subpoenas are untimely because they were issued outside of the deadline for fact discovery. (DE 29.) Bartow responds that the parties remain entitled to engage in fact discovery because the end date for all discovery has yet to pass. (DE 30.) Both parties, however, miss a crucial issue—whether SCCI even has standing to challenge Bartow's subpoenas.

In assessing a *party's* motion to quash a *non-party* subpoena, courts must consider, as a threshold matter, whether the moving party has standing to make such a motion. *Doe v. Town of Greenwich*, Civ. No. 3:18CV01322(KAD), 2020 WL 2374990, at *2 (D. Conn. Apr. 21, 2020) ("As a threshold matter, the Court considers whether [the movant] has standing to move to quash or for a protective order as to

11

these subpoenas."). To have standing to challenge a non-party subpoena, the movant must have "some personal right or privilege with regard to the documents sought." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2008); *see Rodal v. Mass. Mut. Life Ins. Co.*, CV 19-1960 (JMA) (AKT), 2020 WL 3448278, at *1 (E.D.N.Y. Apr. 23, 2020) ("A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right.") (internal quotation marks and citation omitted). "When deciding whether a personal privilege or right exists, courts should consider 'whether the information itself is private, confidential, privileged, or highly sensitive." *Forsythe v. Midland Funding LLC*, 18 CV 03276 (ARR) (CLP), 2019 WL 245459, at *3 (E.D.N.Y. Jan. 17, 2019) (internal quotation marks, brackets, and citation omitted); *see US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811(CM)(JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) (explaining that a "personal right or privilege" in the motion to quash context includes "an interest in proprietary, confidential information" or "maintaining a privilege that would be breached by disclosure") (citation omitted). Importantly, the claim of personal right or privilege "must be personal to *the movant*, not the non-party witness on whom the subpoena was served." *Rodal*, 2020 WL 3448278 at *2 (emphasis added) (internal quotation marks and citation omitted).

SCCI has failed to establish that it has standing to move to quash Bartow's subpoenas directed at non-party Bachant Builders. All the Court can surmise from SCCI's motion is that SCCI obtained two appraisals from Bachant Builders—a general contractor—for the cost of construction required to rectify the damage caused by the water event. (DE 29 at 1.) SCCI does not assert *any* personal right or privilege over materials and information sought by Bartow through the subpoenas at issue. (*See generally id.* at 1–4.) Indeed, the issue of standing goes wholly unaddressed in SCCI's motion, presumably because SCCI has no basis to claim that the information Bartow seeks is "private, confidential, privileged, or highly sensitive" information personal to it. *Forsythe*, 2019 WL 245459 at *3. Because SCCI has not established that it has standing to move to quash the subpoenas, its motion must be denied.

Even if the Court were to conclude that SCCI has standing, the result would not change. SCCI focuses its entire motion to quash on the grounds that Bartow's subpoenas are untimely—given that the fact discovery deadline has expired—and unnecessary. (*See generally* DE 29.) SCCI is correct that "[f]act discovery deadlines in federal court are more than just aspirational suggestions." (*Id.* at 1 (citation omitted).) However, in claiming that the parties are past the point where they may conduct *any* fact discovery, SCCI misapprehends the discovery deadlines set by the Court. Although general fact discovery concluded on December 10, 2021 (*see*

13

Electronic Order dated Nov. 12, 2021), *all discovery*, including expert discovery, remains open until April 8, 2022 (*see* Electronic Order dated Jan. 13, 2022). That the latter deadline *includes* expert discovery underscores that ancillary fact discovery disclosures may be made up until April 8, 2022.

The current dispute highlights why the Court crafted this case's discovery schedule in a manner that permits the parties to engage in continuing fact discovery until the ultimate close of all discovery. This leaves the parties opportunity to follow up and conclude fact discovery as needed up to the end date of *all* discovery. Parties, of course, always have a continuing obligation to supplement their initial disclosures, including a computation of damages, "in a timely manner if the part[ies] learn[] that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A). That appears to be what SCCI did here after learning that Bachant Builders original appraisal for construction costs increased because of "cost of materials and . . . inflation generally." (DE 29 at 1.) Bartow is entitled to respond to this newly acquired information by conducting non-party fact discovery. To hold otherwise would be contrary to Federal Rule of Civil Procedure 1's mandate that federal courts construe and administer the Rules to secure a just determination of every action and proceeding. Fed. R. Civ. P. 1.

In sum, SCCI's motion to quash is denied.

## II. CONCLUSION

For the foregoing reasons, (1) SCCI's motion to compel the production of the Utica Documents is denied as to the documents bearing Bates Numbers 1550–2671 and granted as to all other documents; and (2) SCCI's motion to quash is denied.

Dated: Central Islip, New York
March 3, 2022

S O  O R D E R E D:

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge